**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**


| | | |
|---|---|---|
| **J. CATHELL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.:** _____ |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **HALEY ELIZABETH MARTIN** | ) | |
| **and WEAR TO WANDER CO.** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff J. Cathell, Inc. ("**J. Cathell**") brings this action for preliminary and permanent injunctive relief, monetary damages, and other relief against its former employee Haley Elizabeth Martin ("**Martin**") and the limited liability company Martin organized, Wear To Wander Co. LLC ("**WTW**") (collectively, "**Defendants**"), and respectfully alleges as follows:

## PARTIES

1.     Plaintiff J. Cathell is a corporation formed under the laws of the State of Georgia, having a principal place of business at 958 Nawench Drive, Atlanta, Georgia 30327.

2.     Defendant Martin, on information and belief, is a citizen and resident of Canton, Georgia. On information and belief, Defendant Martin resides and may be found at 550 Riverstone Parkway, Apt. E134, Canton, Georgia 30114. Defendant Martin is the organizer of Defendant WTW.

3.     Defendant WTW is a limited liability company formed under the laws of the State of Georgia, having a principal place of business at 550 Riverstone Parkway, Apt. E134, Canton, Georgia 30114, and having a registered agent, United States Corporation Agents, Inc. located at 1420 Southlake Plaza Dr., Morrow, Georgia 30260.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States, and specifically, 18 U.S.C. § 1836 *et seq.* This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful conduct giving rise to the claims alleged herein occurred in this District and because at least one of the Defendants resides within this District.

6.      This Court has personal jurisdiction over Defendant Martin who resides in the State of Georgia in this District.

7.      This Court has personal jurisdiction over WTW pursuant to O.C.G.A. § 9-10-91 because it transacts business in the State of Georgia in this District, has committed a tortious act or injury within the State of Georgia in this District, and/or has committed a tortious injury in the State of Georgia in this District caused by an act or omission outside the State of Georgia in this District.

## FACTUAL BACKGROUND

### *J. Cathell's Business*

8.      J. Cathell offers style looks, design tips, and travel advice through the Instagram handle @j.cathell (the "**J. Cathell Instagram**").

9.      J. Cathell also maintains a website, www.jcathell.com, which also offers style looks, design tips, and travel advice, among other things (the "**J. Cathell Website**").

10.     J. Cathell also maintains an account on the Like To Know It ("**LTK**") webpage, which contains the various posts also available on the J. Cathell Instagram, and J. Cathell Website and J. Cathell Facebook (the "**J. Cathell LTK Account**").

11.     J. Cathell also maintains an account on Facebook (the "**J. Cathell Facebook**") and an account on Pinterest (the "**J. Cathell Pinterest**" and together

with the J. Cathell Instagram, J. Cathell Website, J. Cathell LTK Account and J. Cathell Facebook, the "**J. Cathell Pages**"), both of which contain various links to the J. Cathell Instagram, J. Cathell Website and J. Cathell Facebook.

12.     Currently, J. Cathell has approximately 130,000 followers of the J. Cathell Instagram, 92,300 followers of the J. Cathell LTK Account, 3,600 followers of the J. Cathell Facebook and 19,300 followers of the J. Cathell Pinterest, primarily due to the notoriety of J. Cathell's officer Jessica Cathell ("**Jess Cathell**") who is a leading style, design, and travel social media influencer and blogger.

13.     The posts on the J. Cathell Pages present specially curated outfits for travel to certain destinations, as well as looks incorporating specific styles (*i.e.*, floral prints, denim dresses, and patterned jackets) and for specific events (*i.e.*, work, football gameday, and date night). True and correct copies of a select number of exemplary posts from the J. Cathell Pages are attached hereto respectively as **Exhibits A–E**.

14.     The outfits and style sense presented on the J. Cathell Pages, are curated from various trade secrets and confidential, proprietary, and/or non-public information related to a confidential formula created and derived by J. Cathell based on proprietary research related to its target market.

15.     The posts on the J. Cathell Pages presenting the outfits and style sense

include specific trade dress, including:

      a.    A first image showing a certain destination with following images showing specifically curated outfits;

      b.    Components of the curated outfit images including:

          i.    Commentary on certain pieces included in the image;

          ii.    A title for the particular style;

          iii.    Layering the components of the outfit on the image;

          iv.    Style and aesthetic of the overall image;

          v.    Text appearing at the bottom of the page, including the business name; and

          vi.    The particularized combination of all of these elements.

16.    Consumers may purchase the items selected by J. Cathell by clicking on links to the items contained on the J. Cathell Pages. The links offered on the J. Cathell Pages ultimately redirect the consumer to the webpage of the retailer offering the items.

17.    J. Cathell receives a commission from the sales of the items from the applicable retailer when a consumer purchases the items after clicking on the links provided by J. Cathell on the J. Cathell Pages.

### *Martin's Employment with J. Cathell*

18.     Defendant Martin was employed by J. Cathell beginning in September 2020 and served as an assistant to Jess Cathell.

19.     During the course of Martin's employment, Jess Cathell, among other things, taught and trained Martin in the J. Cathell business and style model by teaching her the J. Cathell trade dress and by giving her exclusive access to the proprietary formulas created by J. Cathell using various trade secrets and confidential, proprietary, and/or non-public information and by teaching her how to interpret the data generated by the formulas to curate J. Cathell's posts for the public.

20.     J. Cathell invested significant time and expense to train Martin, and through Martin's training and employment, provided Martin with training regarding the J. Cathell trade dress and access to its trade secrets and confidential, proprietary, and/or non-public information otherwise unavailable to others.

21.     During the course of her employment with J. Cathell and pursuant to her training and access to J. Cathell's trade dress, trade secrets and confidential, proprietary, and/or non-public information, Martin was primarily responsible for using J. Cathell's formulas to design social media posts and curate outfits contained within the posts on the J. Cathell Pages.

22.     In performing her duties for J. Cathell, Martin had access to J. Cathell's

valuable trade secrets and confidential, proprietary, and/or non-public information related to J. Cathell's business, operations, applications and systems, services, design development, and formulas and strategies for customer retention, acquisition, and growth.

23.     All of this information Martin had access to during the course of her employment with J. Cathell is unique to J. Cathell and derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by, proper means by other persons who can obtain economic value from their disclosure or use.

24.     During the course of her employment with J. Cathell, Martin was the sole employee, other than Jess Cathell, responsible for using J. Cathell's confidential information and trade dress to curate J. Cathell's content and social media posts.

25.     During the course of her employment with J. Cathell, Jess Cathell would have multiple meetings with Martin to discuss J. Cathell's business and various ideas and strategies to continue its business and generate its content.

26.     No one other than Martin and Jess Cathell created social media posts or generated content curation. And, no one other than Martin and Jess Cathell had access to or knowledge about J. Cathell's confidential information and proprietary formulas used to develop its posts for its consumers.

27.     Throughout Martin's employment with J. Cathell, Martin was instructed and advised on multiple occasions that the information used during her training and the information she had access to was J. Cathell's valuable trade secrets and confidential, proprietary and non-public information.

28.     In fact, as a specific condition of and in consideration of her employment, Martin was expected to adhere to strict non-disclosure and non-use obligations to protect the confidential, proprietary, and/or non-public nature of J. Cathell's valuable trade secrets and confidential, proprietary, and/or non-public information.

29.     Martin conveyed her agreement and acknowledgement of these non-disclosure and non-use obligations to protect the confidential, proprietary, and/or non-public nature of J. Cathell's valuable trade secrets and confidential, proprietary, and/or non-public information on numerous occasions through text message correspondence with Jess Cathell and through other non-written communications with Jess Cathell. True and correct copies of exemplary text message correspondence are attached hereto as **Exhibit F**.

30.     In an effort to maintain its confidentiality, J. Cathell does not create or store any written documentation related to the exact formulas utilized by J. Cathell and the software and accounts used to track sales and other metrics related to success

of certain styles were password protected.

31.    In the course of Martin's employment with J. Cathell and to fulfill her duties to J. Cathell, Martin was provided with the passwords to the accounts.

32.    In providing Martin with J. Cathell's passwords to its various accounts, Martin was again instructed and advised on multiple occasions that the information accessed by using the passwords contained J. Cathell's valuable trade secrets and confidential, proprietary and non-public information.

33.    These efforts to protect the non-public nature and confidentiality of J. Cathell's trade secrets and confidential, proprietary, and/or non-public information are examples of the specific and reasonable measures that J. Cathell takes to protect the confidentiality and maintain the secrecy of its trade secrets and confidential, proprietary, and/or non-public business information.

### *Martin's Unlawful Conduct*

34.    In or about April 2022, Jess Cathell discovered the Instagram account @weartowander.co (the "**WTW Instagram**"), and subsequently WTW's website www.weartowander.co (the "**WTW Website**") and the WTW accounts on Pinterest (the "**WTW Pinterest**"), Facebook (the "**WTW Facebook**") and LTK (the "**WTW LTK Account**" and together with the WTW Instagram, WTW Website, WTW Pinterest and WTW Facebook, the "**WTW Pages**").

35.     The WTW Pages included posts nearly identical in format and concept to the posts on the J. Cathell Pages. True and correct copies of exemplary posts on the WTW Pages are attached hereto respectively as **Exhibits G–K**.

36.     Like the posts on the J. Cathell Pages, the posts on the WTW Pages include:

> a.     A first image showing a certain destination with following images showing specifically curated outfits;
>
> b.     Components of the curated outfit images including:
>
>> i.     Commentary on certain pieces included in the image;
>>
>> ii.    A title for the particular style;
>>
>> iii.   Layering the components of the outfit on the image;
>>
>> iv.    Style and aesthetic of the overall image;
>>
>> v.     Text appearing at the bottom of the page, including the business name; and
>>
>> vi.    The particularized combination of all of these elements.

37.     Similar to J. Cathell, WTW offers the ability to purchase the items appearing on the WTW Pages by clicking on links to the items provided by WTW. The links offered on the WTW Pages redirect the consumer to the webpage of the retailer offering the item.

38.     On information and belief, WTW receives a commission from the sales of the items from the applicable retailer when a consumer purchases the item after clicking on the links provided by WTW on the WTW Pages.

39.     Upon discovering the WTW Pages, Jess Cathell had multiple conversations with Martin about the WTW Pages and the nearly identical nature of its concept, content and format to those of J. Cathell.

40.     During these multiple conversations, some of which were memorialized in text messages, Jess Cathell repeated to Martin the importance of maintaining the confidential nature of J. Cathell's valuable trade secrets and confidential, proprietary and non-public information, and asked her on numerous occasions if Martin knew how WTW was attempting to replicate J. Cathell's trade dress and business and style model.

41.     During these multiple conversations, Martin acknowledged the confidential nature of J. Cathell's valuable trade secrets and confidential, proprietary and non-public information and denied having any knowledge of WTW and its attempt to replicate J. Cathell's trade dress and business and style model.  True and correct copies of exemplary conversations between Jess Cathell and Martin memorialized in text messages are attached hereto as **Exhibit L**.

42.     As a result of Martin's statements and assurances to Jess Cathell, J.

Cathell continued to give Martin access to J. Cathell's trade secrets and confidential, proprietary, and/or non-public information, including but not limited to its confidential formulas.

43.     Despite discovering the WTW Pages and their similar nature to J. Cathell, Jess Cathell focused on continuing J. Cathell's business and developing new ideas and strategies for J. Cathell's content.  Jess Cathell continued having meetings with Martin to discuss these new ideas and strategies for J. Cathell's content.

44.     However, on various occasions, Jess Cathell would discover that the information, ideas and strategies discussed during these confidential meetings would seem to be implemented by WTW on the WTW Pages shortly after Jess Cathell's confidential meetings with Martin.

45.     In August 2022, Jess Cathell became suspicious that Martin was copying J. Cathell's information, ideas and strategies on WTW and the WTW Pages.

46.     Suspicious about the creation of WTW, on or about September 3, 2022, Jess Cathell reviewed the public Georgia Secretary of State filings for WTW and discovered that Martin was its organizer.

47.     Following this discovery, Jess Cathell had a conversation with Martin regarding WTW and the WTW Pages. Martin was aware that she was replicating the J. Cathell Pages, and Martin was unwilling to take any action to remedy this unlawful

conduct.

48.     Thereafter, Martin's employment was terminated.

### *Impact on J. Cathell's Business*

49.     In only approximately eleven (11) months, WTW has approximately 89,800 followers of the WTW Instagram. By comparison, the J. Cathell Instagram has garnered 130,000 followers in 1.5 years.

50.     On information and belief, Martin used J. Cathell's tried, true, and successful confidential and proprietary formulas to quickly obtain followers and convert those into sales through commissions with retailers.

51.     Martin acted as an agent and employee of WTW when she utilized J. Cathell's trade dress, trade secrets and confidential, proprietary, and/or non-public information to generate the content on the WTW Pages which was nearly identical in appearance and concept to J. Cathell's content.

52.     During the course of her employment with J. Cathell, Martin agreed and acknowledged the non-disclosure and non-use obligations of J. Cathell's valuable trade secrets and confidential, proprietary and/or non-public information.

53.     As such, Martin was not authorized to use J. Cathell's trade secrets and confidential, proprietary, and/or non-public information for this purpose.  Further, Martin knew she was not authorized to use J. Cathell's trade dress, trade secrets and

confidential, proprietary, and/or non-public information for any purpose other than to assist in developing J. Cathell's content during the course of her employment with J. Cathell.

54.     Martin relied upon the trade dress, trade secrets and confidential, proprietary, and/or non-public information received during her employment with J. Cathell to induce J. Cathell's current and prospective customers to purchase products through Martin's partnerships with various retailers, instead of J. Cathell's partnerships.

55.     On information and belief, Martin has exploited her employment with J. Cathell to misappropriate J. Cathell's trade dress, trade secret and confidential, proprietary, and/or non-public information for her benefit and for the benefit of WTW.

56.     In fact, one link on the WTW Website redirects to J. Cathell's LTK Account, confirming Defendants' intent to copy J. Cathell's trade dress, trade secret and confidential, proprietary, and/or non-public information, as well as trade dress, for Martin's benefit and for the benefit of WTW.  True and correct copies of such link redirection and related code are attached hereto as **Exhibit M.**

57.     As a result of Martin's and WTW's unlawful and unjustified, wrongful conduct, J. Cathell has been damaged by the loss of its financial competitive edge

arising from the use of its trade dress and use and disclosure of its trade secrets and confidential, proprietary and/or non-public information.

58.   As a result of Martin's and WTW's unlawful and unjustified, wrongful conduct, J. Cathell has been damaged by the loss of customers, the loss of revenue, and the loss of profits.

59.   J. Cathell has been harmed and continues to suffer irreparable harm as a consequence of Defendants' actions, including but not limited to the disclosure of J. Cathell's confidential and proprietary formulas.

60.   Based on the foregoing wrongful conduct by Defendants, which was knowing, willful, intentional, reckless, and/or grossly negligent, J. Cathell is entitled to an award of compensatory damages, punitive and exemplary damages, and injunctive relief.

<u>**COUNT I**</u>
**Violation of the Defend Trade Secrets Act**
(*Against Defendants*)

61.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

62.   As a result of her employment and position of trust with J. Cathell, Martin was given access to J. Cathell's valuable trade secrets, including but not limited to J. Cathell's business, operations, applications and systems, services,

design development, and formulas and strategies for customer retention, acquisition, and growth. This information is unique to J. Cathell and derives its value from not being commonly known or available to the public.

63.     J. Cathell takes reasonable steps to protect the secrecy of its trade secrets and confidential, proprietary, and/or non-public information discussed herein. J. Cathell's reasonable steps include but are not limited to: password protecting its programs offering sales metrics; restricting employee access to trade secrets and confidential, proprietary, and/or non-public information to employees with a legitimate business need to know such information; and enforcing disciplinary action against employees for improper disclosure of trade secrets and confidential, proprietary, and/or non-public information.

64.     J. Cathell employed the aforementioned protections to maintain the secrecy of the trade secret information that Martin began using in connection with WTW and the WTW Pages.

65.     J. Cathell's trade secrets relate to products and/or services used in, or intended for use in, interstate or foreign commerce.

66.     Notwithstanding J. Cathell's efforts to maintain the confidentiality of its trade secrets, on information and belief, Martin, as an agent for WTW,

intentionally misappropriated J. Cathell's valuable trade secrets used in, or intended for use in interstate or foreign commerce for the benefit of WTW.

67.     Prior to and following the termination of Martin's employment with J. Cathell, Defendants disclosed and utilized J. Cathell's business, operations, applications and systems, services, design development, formulas and strategies for customer retention, acquisition, and growth, and other trade secrets and confidential, proprietary, and/or non-public information for the unlawful economic benefit of Defendants to the detriment of J. Cathell.

68.     The information misappropriated by Defendants derives independent economic value from not being generally known within the industry to J. Cathell's competitors who could obtain economic benefit from the disclosure, use, and replication of key information that contributes to and secures J. Cathell's competitive edge in the market place.

69.     The information misappropriated by Defendants constitutes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

70.     Defendants' misappropriation of J. Cathell's trade secrets gave and continues to give Defendants an unfair and unjust advantage in the operation of a competing business.

71.     Indeed, Defendants have used misappropriated trade secret information to implement the same formula to attract followers and convert followers to sales as J. Cathell using trade secret information regarding those customers' product needs, order history, and order preferences.

72.     To date, Defendants continue to unlawfully use and disclose J. Cathell's valuable trade secret information.

73.     The use and disclosure, and even threatened use and disclosure of J. Cathell's trade secrets by Defendants entitles J. Cathell to immediate injunctive relief and damages, pursuant to 18 U.S.C. § 1836(b)(3), together with interest.

74.     At all material times, Defendants have acted willfully, maliciously, and in bad faith.

75.     J. Cathell has suffered and will continue to suffer irreparable harm as a result of Defendants' misappropriation.

76.     Wherefore, J. Cathell prays that the Court enter judgment against Defendants:

       a.     Enjoining Defendants, pursuant to 18 U.S.C. § 1836(b)(3)(A), from using or disclosing J. Cathell's trade secret information for the benefit of Martin, WTW, or otherwise;

b.   Awarding J. Cathell damages as set forth in 18 U.S.C. § 1836(b)(3)(B), together with interest; and

c.   Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT II
## Misappropriation of Trade Secrets Pursuant to Georgia Trade Secrets Act
(*Against Defendants*)

77.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

78.   As a result of her employment and position of trust with J. Cathell, Martin was given access to J. Cathell's valuable trade secrets, including but not limited to J. Cathell's business, operations, applications and systems, services, design development, formulas and strategies for customer retention, acquisition, and growth. This information is unique to J. Cathell and derives its value from not being commonly known or available to the public.

79.   J. Cathell takes reasonable steps to protect the secrecy of its trade secrets and confidential, proprietary, and/or non-public information discussed herein. J. Cathell's reasonable steps include but are not limited to: password protecting its programs offering sales metrics; restricting employee access to trade secrets and confidential, proprietary, and/or non-public information to employees

with a legitimate business need to know such information; and enforcing disciplinary action against employees for improper disclosure of trade secrets and confidential, proprietary, and/or non-public information.

80.   J. Cathell employed the aforementioned protections to maintain the secrecy of the trade secret information that Martin begin using in connection with WTW and the WTW Pages.

81.   J. Cathell's trade secrets relate to products and/or services used in, or intended for use in, interstate or foreign commerce.

82.   Notwithstanding J. Cathell's efforts to maintain the confidentiality of its trade secrets, on information and belief, Martin as an agent for WTW intentionally misappropriated J. Cathell's valuable trade secrets and confidential business information for the benefit of WTW.

83.   Prior to and following the termination of Martin's employment with J. Cathell, Defendants disclosed and utilized J. Cathell's business, operations, applications and systems, services, design development, formulas and strategies for customer retention, acquisition, and growth, and other trade secrets and confidential, proprietary, and/or non-public information for the unlawful economic benefit of Defendants to the detriment of J. Cathell.

84.     Specifically, Defendants have used misappropriated trade secret information to implement the same formula to attract followers and convert followers to sales as J. Cathell using trade secret information regarding those customers' product needs, order history, and order preferences.

85.     Defendants knew the disclosures and utilization were illegal.

86.     The information misappropriated by Defendants derives independent economic value from not being generally known within the industry to J. Cathell's competitors who could obtain economic benefit from the disclosure, use, and replication of key information that contributes to and secures J. Cathell's competitive edge in the market place.

87.     The information misappropriated by Defendants constitutes trade secrets under the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq*.

88.     To date, Defendants continue to unlawfully use and disclose J. Cathell's valuable trade secret information.

89.     Without such information, Defendants would not have known the same formula used by J. Cathell to attract followers and convert followers to sales.

90.     Defendants' misappropriation of J. Cathell's trade secrets gave and continues to give Defendants an unfair and unjust advantage in the operation of a competing business.

91.    The use and disclosure, and even threatened use and disclosure of J. Cathell's trade secrets by Defendants entitles J. Cathell to immediate injunctive relief and damages, pursuant to O.C.G.A. § 10-1-762, together with interest.

92.    At all material times, Defendants have acted willfully, maliciously, and in bad faith.

93.    J. Cathell has suffered and will continue to suffer irreparable harm as a result of Defendants' misappropriation of its valuable trade secrets and confidential, proprietary, and/or non-public information.

94.    Wherefore, J. Cathell prays that the Court enter judgment against Defendants:

        a.    From using or disclosing J. Cathell's trade secret information for the benefit of Martin, WTW, or otherwise;

        b.    Awarding J. Cathell damages as set forth in O.C.G.A. § 10-1-763, together with interest;

        c.    Awarding J. Cathell attorneys' fees as set forth in O.C.G.A. § 10-1-764; and

        d.    Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT III
## Breach of Employee Duty of Loyalty
## (*Against Martin*)

95.     J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

96.     During her employment with J. Cathell, Martin owed J. Cathell a duty of loyalty not to act contrary to J. Cathell's interests, which included, but was not limited to, a duty to avoid competition with J. Cathell, refrain from using J. Cathell's trade dress, and refrain from disclosing or using J. Cathell's trade secrets and confidential, proprietary, and/or non-public information.

97.     Martin breached her duty of loyalty by, *inter alia*:

    a.     Using J. Cathell's trade dress on the WTW Pages during her employment with J. Cathell;

    b.     Disclosing J. Cathell's trade secret information to WTW and using it for her personal benefit during her employment with J. Cathell;

    c.     Wrongfully disclosing and misappropriating J. Cathell's trade secret and confidential, proprietary, and/or non-public information for the benefit of WTW during her employment with J. Cathell; and

d.     Other illegal acts designed to unfairly compete with J. Cathell.

98.     As a direct and proximate result of Martin's willful breach of her duty of loyalty to J. Cathell, J. Cathell has suffered and will continue to suffer damages in the form of wages and benefits paid to, but not earned by Martin, lost business, lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries.

99.     Based on the foregoing wrongful conduct by Martin, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Martin breached her duty of loyalty and J. Cathell is entitled to disgorgement of any compensation paid to Martin as well as an award of punitive damages.

100.     Wherefore, J. Cathell prays that the Court enter judgment against Martin:

a.     Requiring Martin to pay compensatory and punitive damages to J. Cathell in an amount to be fixed at trial, together with interest;

b.     Requiring Martin to disgorge all wages, including commissions, paid by J. Cathell after Martin's disclosure of J. Cathell's trade secrets and confidential, proprietary, and/or non-public information to WTW;

c.      Awarding J. Cathell its costs incurred in connection with this action; and

d.      Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT IV
### Breach of Contract
### (*Against Martin*)

101.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

102.   This is an action for damages and preliminary and permanent injunctive relief against Martin for her breach of the oral agreement with J. Cathell to not disclose J. Cathell's trade secrets or confidential, proprietary, or non-public information.

103.   Pursuant to this agreement, Martin was prohibited from disclosing or using J. Cathell's trade secrets and confidential, proprietary, and/or non-public information during or after her employment with J. Cathell.

104.   The agreement is valid and enforceable under Georgia law, which governs its interpretation and enforcement.

105.   J. Cathell fully performed its obligations under this agreement.

106.   In violation of the agreement, Martin accessed and disclosed J.

Cathell's trade secrets and confidential, proprietary, and/or non-public information, including business, operations, applications and systems, services, design development, formulas and strategies for customer retention, acquisition, and growth.

107.   Martin's use and/or disclosure of J. Cathell's trade secrets and confidential, proprietary, and/or non-public information *during* her employment with J. Cathell constitutes a breach of the agreement.

108.   Martin's use and/or disclosure of J. Cathell's trade secrets and confidential, proprietary, and/or non-public information *following* her employment with J. Cathell constitutes a breach of the agreement.

109.   As a direct, proximate, and foreseeable result of Martin's breach, J. Cathell has been injured and damaged, and continues to incur such injury and damage.

110.   J. Cathell has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

111.   Wherefore, J. Cathell prays that the Court enter judgment against Martin:

> a.      Awarding J. Cathell a temporary and permanent injunction to enforce the agreement;

    b.    Awarding J. Cathell damages in an amount to be determined at trial, together with interest; and

    c.    Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT V
## Unfair Trade Practices
### (*Against Defendants*)

112.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

113.   Defendants have engaged in unfair and deceptive trade practices, namely, undertaking a concerted effort to unlawfully misappropriate J. Cathell's trade secrets and confidential, proprietary, and/or non-public information and disrupt J. Cathell's business relationships with its customers and utilizing J. Cathell's trade dress in violation of O.C.G.A. § 10-1-372.

114.   Defendants have utilized J. Cathell's trade dress, as well as its trade secrets and confidential, proprietary, and/or non-public information to afford themselves an unfair competitive advantage over J. Cathell, including permitting them to benefit at the expense of J. Cathell from the improper misappropriation, use, and inevitable use of J. Cathell's trade dress, trade secrets and confidential, proprietary, and/or non-public information and gaining the unfair advantage in

obtaining a head start in their operations from not having to experience the same trial and error that J. Cathell experienced in its development of its trade secrets and confidential, proprietary, and/or non-public information.

115.   Specifically, Defendants' misappropriation of J. Cathell's trade secrets and confidential and proprietary information has deprived J. Cathell of the economic benefit therein and prevented J. Cathell from reaping the benefits of goodwill garnered with its customers.

116.   Defendants' use of J. Cathell's trade dress and confidential and proprietary information and goodwill to solicit J. Cathell's customers will inevitably result in the loss of business from J. Cathell's customers.

117.   Such effort by Defendants to unfairly compete with J. Cathell offends established public policy and are immoral, unethical, oppressive, and unscrupulous.

118.   Wherefore, J. Cathell prays that the Court enter judgment against Defendants:

      a.      Enjoining Defendants' unfair competition;

      b.      Awarding J. Cathell damages, together with interest; and

      c.      Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT VI
### Unjust Enrichment
#### (*Against Defendants*)

119.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

120.   Defendants' improper conduct alleged above, including their misappropriation of and use and/or threatened or inevitable use of J. Cathell's trade dress and trade secrets and confidential, proprietary, and/or non-public information, has enabled and will continue to enable Defendants to unfairly compete with J. Cathell, including permitting Defendants to gain a head start in their operations from not having to experience the same trial and errors that J. Cathell experienced in developing the trade dress and trade secrets and confidential, proprietary, and/or non-public information.

121.   These actions were wrongful and performed in a malicious manner to harm J. Cathell and unjustly enrich Defendants at J. Cathell's expense.

122.   As a direct and proximate result of Defendants' improper conduct alleged above, Defendants have been unjustly enriched in an amount to be determined by the trier of fact, and J. Cathell is entitled to disgorgement of any and all profits, earnings, and commissions attributable to Defendants' wrongful actions.

123.   Wherefore, J. Cathell prays that the Court enter judgment against

Defendants:

    a.    Awarding J. Cathell damages in an amount to be determined by an accounting, together with interest; and

    b.    Awarding J. Cathell such other and further relief as the Court deems just and proper.

**COUNT VII**
**Willful Infringement of Trade Dress**
**Lanham Act, 15 U.S.C. § 1051 *et seq.***
**(*Against Defendants*)**

124.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

125.   The following design or trade dress of the posts on the J. Cathell Pages is arbitrary and non-functional and has become identified in the market as originating with J. Cathell:

    a.    A first image showing a certain destination with following images showing specifically curated outfits;

    b.    Components of the curated outfit images including:

        i.    Commentary on certain pieces included in the image;

        ii.    A title for the particular style;

        iii.    Layering the components of the outfit on the image;

        iv.    Style and aesthetic of the overall image;

v.    Text appearing at the bottom of the page, including the
business name; and

vi.    The particularized combination of all of these elements.

126.   As a result of the sales and advertising by J. Cathell, the trade dress of
the posts on J. Cathell's Pages has acquired secondary meaning and distinctive trade
dress meaning to potential purchasers, in that potential purchasers have come to
associate posts like J. Cathell's bearing such trade dress with J. Cathell.

127.   Defendants, by and through, among other things, the WTW Pages
adopted advertising, trade dress, and other product design that is identical and/or
confusingly similar to J. Cathell's advertising and trade dress, such that it misleads
consumers to believe that the posts on the WTW Pages originate from or are
sponsored or endorsed by J. Cathell.

128.   These confusingly similar aspects include, without limitation: the
overall "look" of the WTW Pages, which is presented in a style and manner so as to
be confusingly similar to J. Cathell's trade dress, including, without limitation, the
J. Cathell Pages.

129.   In fact, one link on the WTW Website redirects to J. Cathell's LTK
Account, confirming Defendants' intent to copy J. Cathell's trade dress.

130.   More specifically, Defendants' willful duplication of the J. Cathell Pages, from the style and positioning of the individual elements and similar fonts and colors, resulted in the WTW Pages, which is highly similar to the J. Cathell Pages and misleads customers to believe that the WTW Pages originate from, or are sponsored or endorsed by J. Cathell.

131.   As a direct and proximate result of Defendants' wrongful acts as alleged herein, the Defendants obtained unlawful profits for themselves and/or others to the express detriment of J. Cathell. J. Cathell is entitled to restitution of all monies improperly diverted from J. Cathell due to Defendants' conspiracy.

132.   Defendants were acutely aware that they were acquiring and misappropriating J. Cathell's confidential, proprietary, and trade secret information and J. Cathell's trade dress through improper means.

133.   J. Cathell is informed and believes that Defendants committed their acts of infringement willfully and maliciously in that Defendants intended to divert business from J. Cathell at the expense of J. Cathell's profits and market share and to secretly misappropriate J. Cathell's trade dress to their competitive advantage without J. Cathell's knowledge.

134.   Wherefore, J. Cathell prays that the Court enter judgment against Defendants:

a.   Awarding J. Cathell a temporary and permanent injunction requiring Defendants to cease use of J. Cathell's trade dress;

b.   Awarding J. Cathell damages, together with interest;

c.   Awarding J. Cathell punitive and exemplary damages in an amount to be determined at trial; and

d.   Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT VIII
## Fraud/Misrepresentation
### (*Against Martin*)

135.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

136.   Martin developed a scheme to continue receiving J. Cathell's trade secrets and confidential, proprietary, and/or non-public information. As part of this scheme, Martin stated, assured, and represented to Jess Cathell that she did not have any knowledge of WTW and its attempt to replicate J. Cathell's trade dress and business and style model.

137.   These statements, assurances, and representations by Martin were of material facts.

138.   Martin misrepresented the material facts described herein and intended that J. Cathell and Jess Cathell rely on such representations.

139.   As a result of Martin's statements and assurances to Jess Cathell, J. Cathell continued to give Martin access to J. Cathell's trade secrets and confidential, proprietary, and/or non-public information, including but not limited to its confidential formulas.

140.   The misrepresentations described herein were made willfully with the intent to deceive, recklessly and with knowledge, by Martin.

141.   At the time Martin misrepresented the material facts described herein, she knew that J. Cathell would incur injury, losses, and damages.

142.   As a direct, proximate, intended, and foreseeable result of Martin's fraud as described herein, J. Cathell has been injured and damaged (and continues to incur such injuries and damages).

143.   Wherefore, J. Cathell prays that the Court enter judgment against Defendants:

      a.    Awarding J. Cathell damages, together with interest;

      b.    Awarding J. Cathell punitive and exemplary damages in an amount to be determined at trial; and

c.    Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT IX
## Fraud/Suppression
### (*Against Martin*)

144.    J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

145.    Martin made a decision to undermine the interests of J. Cathell by withholding her knowledge of WTW and its attempt to replicate J. Cathell's trade dress and business and style model. In doing so, Martin failed to disclose her actual intent and failed to disclose her involvement with WTW.

146.    Martin suppressed the material facts described herein, which she was under a duty to disclose and/or that should have fairly been disclosed under the circumstances.

147.    Martin intentionally concealed and/or otherwise failed to disclose the material facts described herein to J. Cathell, and such conduct was intentional, gross, oppressive, malicious, and committed with knowledge that such conduct would be harmful to J. Cathell.

148.    Under the circumstances, J. Cathell reasonably and justifiably relied on the representations and assurances made by Martin and acted to its detriment in

continuing to give Martin access to J. Cathell's trade secrets and confidential, proprietary, and/or non-public information, including but not limited to its confidential formulas.

149.   At the time Martin suppressed the material facts described herein, she knew she was suppressing such material facts and knew that J. Cathell would incur injury, losses, and damages.

150.   Martin's actions constitute actionable fraud under applicable law as to J. Cathell.

151.   As a direct, proximate, intended, and foreseeable result of Martin's fraud as described herein, J. Cathell has suffered injuries and damages (and continues to incur such injuries and damages).

152.   Wherefore, J. Cathell prays that the Court enter judgment against Defendants:

      a.     Awarding J. Cathell damages, together with interest;

      b.     Awarding J. Cathell punitive and exemplary damages in an amount to be determined at trial; and

      c.     Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT X
## Negligent Misrepresentation
### (*Against Martin*)

153.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

154.   As outlined above, Martin developed a scheme to continue receiving J. Cathell's trade secrets and confidential, proprietary, and/or non-public information.

155.   As part of this scheme, Martin stated, assured, and represented to Jess Cathell that she did not have any knowledge of WTW and its attempt to replicate J. Cathell's business and style model.

156.   Martin failed to disclose her actual intent and failed to disclose her involvement with WTW.

157.   In making these misrepresentations, Martin negligently supplied false and misleading information with knowledge that J. Cathell would rely on said misrepresentations to continue to give Martin access to J. Cathell's trade secrets and confidential, proprietary, and/or non-public information, including but not limited to its confidential formulas.

158.   Under the circumstances, J. Cathell reasonably and justifiably relied on the misrepresentations described herein.

159.   As a direct, proximate, intended, and foreseeable result of Martin's

misrepresentations as described herein, J. Cathell has been injured and damaged (and continues to incur such injuries and damages).

160.   Wherefore, J. Cathell prays that the Court enter judgment against Defendants:

    a.    Awarding J. Cathell damages, together with interest;

    b.    Awarding J. Cathell punitive and exemplary damages in an amount to be determined at trial; and

    c.    Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT XI
## Conversion
### (*Against Defendants*)

161.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

162.   On information and belief, Defendants have unlawfully and wrongfully converted for their own use J. Cathell's trade dress, trade secrets and confidential, proprietary, and/or non-public information without permission from J. Cathell or compensation to J. Cathell.

163.   Defendants have and continue to interfere with J. Cathell's rightful possession of its property.

164.   As a direct and proximate result of Defendants' unlawful and wrongful conversion of J. Cathell's property, J. Cathell has suffered injury and is entitled to recover actual and compensatory damages and a disgorgement of the Defendants' profits.

165.   Defendants have been, and continue to be, guilty of oppression, fraud, and malice and have acted in conscious disregard of J. Cathell's rights.

166.   Wherefore, J. Cathell prays that the Court enter judgment against Defendants:

      a.      Awarding J. Cathell punitive and exemplary damages in an amount to be determined at trial; and

      b.      Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT XII
### Civil Conspiracy
### (*Against Defendants*)

167.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

168.   Prior to and following the termination of Martin's employment with J. Cathell, Defendants conspired and made a plan to unlawfully tortiously interfere with J. Cathell's contractual and prospective business relations, to misappropriate J.

Cathell's trade dress, trade secrets and confidential, proprietary, and/or non-public information.

169.   In furtherance of this plan, Defendants used and disclosed J. Cathell's trade dress, trade secrets and confidential, proprietary, and/or non-public information for the benefit Defendants in their procurement of business from the prospective and existing clients and customers of J. Cathell by using J. Cathell's trade dress, trade secrets and confidential, proprietary, and/or non-public information learned by Martin while Martin was employed with J. Cathell.

170.   Specifically, Defendants misappropriated J. Cathell's trade dress and trade secret information, primarily formulas and strategies for customer retention, acquisition, and growth, to solicit those existing and prospective customers using J. Cathell's trade dress, as well as trade secret information regarding those customers' product needs, order history, and order preferences.

171.   Defendants' willful and malicious acts and conduct prevented or will prevent prospective sales between J. Cathell and its prospective customers from occurring, proximately causing damage to J. Cathell, not limited to a loss of revenue.

172.   As a result of Defendants' conduct, J. Cathell has suffered great and irreparable harm. In addition, or in the alternative, J. Cathell has suffered special damages in an amount to be determined at trial.

173.   J. Cathell has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

174.   Wherefore, J. Cathell prays that the Court enter judgment against Defendants:

      a.    Awarding J. Cathell a temporary and permanent injunction to prohibit Defendants' conduct;

      b.    Awarding J. Cathell damages in an amount to be determined at trial, together with interest;

      c.    Awarding J. Cathell its costs incurred in connection with this action; and

      d.    Awarding J. Cathell such other and further relief as the Court deems just and proper.

## COUNT XIII
### Punitive Damages
### (Against Defendants)

175.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

176.   The actions and/or omissions of Defendants showed willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care, which would raise the presumption of conscious indifference to the consequences.

177.   J. Cathell is entitled to punitive damages in an amount to be determined at trial.

178.   The amount of punitive damages is not limited by O.C.G.A. § 51-12-5.1(g) because Defendants acted, or failed to act, with a specific intent to cause harm as provided by O.C.G.A. § 51-12-5.1(f).

179.   Wherefore, J. Cathell prays that the Court enter judgment against Defendants including punitive damages in an amount to be determined at trial.

**COUNT IXV**
**Attorneys' Fees Under O.C.G.A. § 13-6-11**
**(Against Defendants)**

180.   J. Cathell realleges and incorporates herein by reference the foregoing paragraphs.

181.   Defendants have acted in bad faith and have caused J. Cathell unnecessary trouble and expense. Accordingly J. Cathell is entitled to recover attorneys' fees and costs of litigation under O.C.G.A. § 13-6-11 and the Lanham Act.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, J. Cathell hereby demands a trial by jury on all issues so triable.

Dated: December 21, 2022

**BURR & FORMAN LLP**

/s/ Tala Amirfazli
Tala Amirfazli, Esq.
Georgia Bar No. 523890
171 Seventeenth Street, N.W.
Suite 1100
Atlanta Georgia 30363
Ph: (404) 815-3000
Fax: (404) 817-3244
Email: tamirfazli@burr.com

*Attorneys for Plaintiff J. Cathell, Inc.*